■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN E. JAYNE, Appellant. — Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered March 4, 1982, upon a verdict convicting defendant of the crimes of robbery in the first degree and rape in the first degree. On October 23, 1981, defendant and codefendant Robert B. Hacker were indicted for the crimes of rape in the first degree and robbery in the first and second degree. Hacker was also charged with the crime of sodomy in the first degree. By omnibus motion dated December 10, 1981, defendant sought to suppress certain statements he made to the police, physical evidence and identification testimony. Defendant also moved to inspect the Grand Jury minutes and to dismiss the indictment for insufficient evidence (CPL 210.20, subd 1, par [b]), and severance of his trial from that of his codefendant. A suppression hearing commenced January 6, 1982. The court granted defendant's motion to inspect the Grand Jury minutes, but denied the motion to dismiss the indictment. The court also granted the motion to suppress certain statements made by defendant to the police. The court denied the motion to suppress certain physical evidence seized from defendant, specifically a blanket and a club allegedly used in the commission of the crime, a broken taillight lens and currency. With respect to identification testimony, defendant's counsel agreed that no constitutional rights would be implicated by the complainant testifying as to her assailant's height, weight and body build in light of the fact that a photograph viewed by the complainant showed only defendant's head. The motion for a severance was denied. Insofar as pertinent to this appeal, the court, while

granting the motion to suppress various statements made by codefendant Hacker, denied the motion as it related to a statement made by Hacker to the effect that he had been with defendant at the time of the crime. A jury trial commenced on January 19, 1982. The complainant, Janet Sprague, testified to the incidents precipitating the prosecution as follows. As she was driving alone during the early morning hours of Saturday, September 26, 1981, the automobile behind her flashed its headlights on and off, causing her to stop. A man, identified by Sprague as Hacker, emerged from the other car. He approached Sprague and informed her that her car was dragging something. She exited her vehicle and proceeded to its rear whereupon the man pulled a ski mask over his head and told her to do as he said or he would kill her. The man, who wielded a club, forced her back into her car. He drove her away from the area, followed by the other car driven by a second man. Sprague was informed that the second man possessed a gun. At some point, the car stopped and the ski mask was placed backwards over Sprague's head so that she could not see. Sprague was led down an embankment by the first man. After laying a blanket upon the ground, and removing Sprague's clothing, he forced her to perform fellatio and engaged her in sexual intercourse. At some point, the second man approached with Sprague's moneymatic card. A moneymatic card enables depositors to make withdrawals through the Marine Midland Bank's computer during nonbanking hours. The second man forced Sprague to tell him the correct code number necessary to utilize the card by threatening to "find" her if she gave a false number. The evidence indicated that the card was used to make a number of withdrawals over the next few days. The second man then engaged Sprague in sexual intercourse. Sprague was not able to positively identify the second man, but circumstantial evidence pointed to defendant. The jury found defendant guilty of the crimes of robbery in the first degree and rape in the first degree. After a hearing, defendant was sentenced as a second felony offender to concurrent indeterminate terms of imprisonment of 10 to 20 years. The lone statement by codefendant Hacker that was not suppressed and was admitted into evidence was a statement made to police that he had been with defendant on Friday and Saturday nights, September 25 and 26, 1981. Defendant contends that since codefendant Hacker did not take the stand and, consequently, could not be cross-examined, defendant was deprived of his constitutional right to confront a witness by denial of his pretrial motion for a severance and the admission of a statement by Hacker (see *Bruton v United States,* 391 US 123). Defendant's girlfriend testified to a statement by defendant on the morning of the crime that he had been with "Bobby", which she understood to refer to codefendant Hacker. Where both defendants have made interlocking extrajudicial confessions, such statements may be admitted in a joint trial with proper limiting instructions (*People v McNeil,* 24 NY2d 550, cert den *sub nom. Spain v New York,* 396 US 937). Defendant asserts that this exception to the *Bruton* rule is not applicable to the instant case because he did not make a full confession and only a full confession will qualify as interlocking. However, where, as here, the codefendant's statement is not a full confession and does not actually implicate the defendant in the commission of the crime, a full confession by the defendant is not necessary to except the case from the *Bruton* rule. This was recognized under circumstances similar to the instant case in *People v Benzinger* (36 NY2d 29), where the Court of Appeals found *Bruton* to be inapplicable where both of the defendants had made statements to the effect that they had been with each other (*id.,* at pp 34-35; see, also, *United States ex rel. Duff v Zelker,* 452 F2d 1009, cert den 406 US 932). Indeed, all that is necessary is that the statements be "substantially similar" (*People v Smalls,* 55 NY2d 407, 415). Here, Hacker's statement that he had been with defendant interlocks with defendant's statement that he had

been with Hacker so that, in light of the limiting instructions given, the potential for prejudice anticipated by *Bruton* is precluded. Since *Bruton* is inapplicable, the trial court did not abuse its discretion in denying defendant's motion for a severance (see *People v Close,* 90 AD2d 562, 565, mot for lv to app den 58 NY2d 782). Defendant next argues that the court improperly denied his motion to suppress certain evidence. To the extent defendant seeks suppression of Hacker's statement, he adds nothing to his *Bruton* argument as Hacker's statement was properly received only against Hacker. Furthermore, the obtaining of the statement from Hacker did not implicate any of defendant's constitutional rights so as to allow defendant to object to its introduction at trial (see *Wong Sun v United States,* 371 US 471, 492). With respect to defendant's contentions regarding identification testimony, defendant's trial counsel agreed, as do we, that Sprague's testimony concerning the second assailant's height, weight and body build was not tainted by the possibly suggestive viewing of a photograph showing only defendant's head. Finally, the transcript of the suppression hearing reveals ample probable cause for defendant's arrest so that his motion to suppress the physical evidence seized from him at that time was properly denied. To the extent defendant's arguments are addressed to the sufficiency of the Grand Jury evidence, the validity of the order denying defendant's motion to dismiss the indictment for insufficient evidence is not reviewable upon the instant appeal (CPL 210.30, subd 6). We have examined defendant's remaining contentions and find them to be without merit. The judgment should, therefore, be affirmed. Judgment affirmed. Mahoney, P. J., Kane, Main, Yesawich, Jr., and Weiss, JJ., concur.